UNITED STATES v. GRADWELL et al.

(District Court, D. Rhode Island.   October 23, 1915.)

No. 114.

1. GRAND JURY ⬤⇒5—QUALIFICATIONS OF JURORS.

A grand juror having been duly drawn and summoned for service in a federal court, and at that time, as required by Judicial Code (Act March 3, 1911, c. 231) § 275, 36 Stat. 1164 (Comp. St. 1913, § 1252), having the qualifications prescribed by the state law, does not become disqualified for service because he thereafter loses a property qualification, which takes him out of the class of voters from which jurors are selected under the state law.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 8–13, 15; Dec. Dig. ⬤⇒5.]

2. CRIMINAL LAW ⬤⇒280—PLEA IN ABATEMENT—SUFFICIENCY.

A plea in abatement to an indictment *held* bad for uncertainty in the use of the words "within the year then next preceding"; it being material whether the calendar year or the 12 months next preceding was meant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 645–651; Dec. Dig. ⬤⇒280.]

3. CRIMINAL LAW ⬤⇒280—PLEAS IN ABATEMENT—MISCONDUCT OF ATTORNEYS BEFORE GRAND JURY.

A plea in abatement on the ground of misconduct of the government attorneys in the grand jury room must set out facts which raise a legal presumption of prejudice.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 645–651; Dec. Dig. ⬤⇒280.]

Criminal prosecution by the United States against Matthew T. Gradwell and others. On demurrers to pleas in abatement by defendant Earl Dodge.  Demurrers sustained.

Harvey A. Baker, U. S. Atty., of Providence, R. I. (William H. Camfield, Asst. U. S. Atty., of Providence, R. I., on the brief), for the United States.

Barney & Lee, Walter H. Barney, Wilson, Gardner & Churchill, and Alexander Churchill, all of Providence, R. I., for defendants.

BROWN, District Judge.  [1] The ninth and tenth pleas in abatement, though they allege that the grand juror was not qualified at the time he was impaneled and sworn, and at the time of the return of the indictment, contain no allegation that he was not liable to serve and duly qualified to serve at the time he was summoned for service in this court.  If the qualification is to be determined as of the date when the juror was summoned, the plea is bad as not negativing his qualification at that time.  For the purposes of the demurrer, and under the strict rules of law applicable to pleas in abatement, we are required to assume that the grand juror was duly qualified when summoned.

The question is then presented whether the facts alleged in the plea, in substance that he was not, when sworn and during his service as grand juror, qualified to vote upon any proposition to impose a tax or for the expenditure of money, are sufficient to work a disqualification; in other words, whether the subsequent loss of that right to vote which he possessed when summoned affects his right to act as a

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

grand juror, and vitiates all proceedings of the grand jury in whose proceedings he took part.

The proposition that the right and duty to serve as a grand juror are concurrent in time with the right to vote as a property voter, so that the qualifications of grand jurors properly selected may respectively expire from time to time during their service as a juror parts with his real estate, or upon the lapse of a year from the time of his payment of a tax on personalty, is so impractical, and would lead to such absurd and unforeseen results, that it must be rejected.

At the argument it was practically conceded that, if qualified to vote at the time when impaneled and sworn, a subsequent loss of qualification as a voter would not disqualify him from completing the duties of a grand juror.

A requirement that jurors shall be selected from the class of voters called property voters (see chapter 279, § 1, Gen. Laws R. I.) does not imply that the right of the courts to compel the performance of jury duty shall be hampered by the laws affecting the future voting rights of persons who were voters, and thus liable to serve, when summoned by the courts. There is nothing in the Rhode Island statutes that requires that a juror shall retain his voting qualifications throughout the time of service, or that limits his liability to service to the time during which he remains qualified to vote. On the contrary, an examination of chapter 279, Gen. Laws R. I., on jurors and juries, and especially of section 19 of said chapter, shows that persons whose names are drawn between the 15th day of June and the second Monday of July in any year shall be liable to serve as jurors at any time before the second Monday of July of the following year, a period which may exceed the year for which the payment of a tax may qualify one to vote. This illustrates that competency to serve is not regarded as necessarily concurrent with competency to vote. Nor is there in the nature of the thing any reason that requires us to consider whether a person duly selected by reason of property qualification for voting has retained that qualification during the period of service.

As a matter of policy it may be provided by statute that jurors shall be chosen from the class of persons who are property voters. This is presumably a rough way of getting superior jurors; but when a juror has been chosen from this class it would be unreasonable and impractical to say that public policy requires that by loss of his real property, or by his neglect to pay a tax, he shall at once be regarded as no longer suitable for service, and be relieved from or rejected from the future performance of a duty, or the completion of a duty, for which he was duly selected under the law. There is no more substantial reason to regard him as unqualified for service by such subsequent disqualification as a voter than exists in the case of a public officer whose eligibility to election depends upon his being a qualified elector, but who does not by losing his vote lose his office. See State v. Lake, 16 R. I. 511, 17 Atl. 552.

The property qualification as a voter implied in section 1, c. 279, Gen. Laws R. I., must be regarded as affecting a person's eligibility for selection as a juror, and not as prescribing a measure of his continuing capacity to serve. The juror having been duly drawn and summoned

for service in this court in conformity with the provisions of chapter 12 of the Judicial Code (Comp. St. 1913, §§ 1252–1265), and at that time having the qualifications prescribed by the state law then in force, should not be permitted to escape such service by any subsequent act whereby he might voluntarily disqualify himself as a voter in future state elections, as, for example, a conveyance of his real property (see In re Voting List, 19 R. I. 614, 35 Atl. 147), or a failure to pay a personal property tax (see In re Providence Voters, 13 R. I. 737). Nor is there any reason why involuntary disqualification for future voting, occurring after he was summoned for jury duty in this court, should require this court to discharge him, except the assumption that under the laws of Rhode Island the right to vote upon a property qualification is a measure of the continuing personal capacity of a person to perform jury service. If we should accept this assumption, it would logically follow that a person duly qualified when summoned might thereafter become incompetent for service in the period after he had been impaneled and sworn, as well as within the period between the date of summons and the date at which he attended court in obedience to the summons.

The concession of the defendant that disqualification for voting occurring after the impaneling of the juror would not affect his capacity to complete his service is practically an admission that property qualification for voting is not a measure of the capacity to perform jury service, but only a requisite for eligibility or for selection for such service.

But it is argued that the time for selection of the juror and for determining his then existing qualifications is the time when the grand jury is impaneled and sworn. State v. Davis, 12 R. I. 492, 34 Am. Rep. 704, does not support the defendant's contention. The plea in abatement in that case related to a grand juror who was taken up on venire; the court saying:

"We think, too, the plea is sufficient in point of form, however it might have been if the juror had been drawn (see State v. Middleton, 5 Port. [Ala.] 484); for we know as a matter of practice, that a grand juror taken up on venire is immediately impaneled and sworn."

State v. Middleton, referred to, held that in the absence of a statute making it necessary that freeholders and householders shall continue such up to the time they are actually drawn to serve on the jury, if they possess this qualification when their names are returned by the sheriff, though they may afterwards part with it, they are competent jurors.

A plea in abatement setting up merely that one of the grand jurors was not, at the time the indictment was found, a freeholder, etc., was held bad on demurrer, for failure to allege that he was neither a freeholder nor householder when the list was returned to the clerk. See, also, Commonwealth v. Jordan, 207 Mass. 259, 93 N. E. 809. The opinion in State v. Davis, therefore, does not decide, but leaves open, the present question.

Upon a consideration of chapter 279, Gen. Laws R. I., I am of the opinion that the duty of jury service imposed by its provisions upon

a person designated in section 1 continues throughout the period prescribed by law, even if at any time during that period of required service he loses the right to vote. The duty being imposed upon him while one of the designated class of voters continues for the prescribed period of time. See chapter 279, §§ 19, 26. No limitation of such period by loss of the right to vote is found in the terms of the statute, and no sound reason exists for implying such limitation.

[2] But even were it true that under a proper construction of the statutes the property qualification to vote must exist at the time the grand juror is sworn and impaneled, there would still remain a question as to the sufficiency of the plea.

In attempting to negative the existence of qualification to vote through payment of a tax, the plea asserts the nonpayment of a tax "within the year then next preceding." Does this mean the calendar year next preceding, or the 12 months next preceding? From the opinion of the court in Re Providence Voters it clearly appears that this is a very indefinite expression. The Supreme Court said:

"There is in fact, if we consider merely the letter of the Constitution, no decisive reason for preferring either construction to the other."

The construction of the constitutional expression by the municipal authorities of the city of Providence, and the construction by the state Legislature, were directly opposed. Though the advisory opinion of the justices adopts the legislative construction, this does not aid the defendant.

We have here not the question of the meaning of this phrase as used in the Constitution, as a matter to be determined in the light of a legislative construction, but the meaning of this language when used by a pleader in a plea in abatement under rules of law which require certainty. If taken to mean the calendar year next preceding, this does not with certainty set forth a disqualification to vote, since the tax may yet have been paid during the 12 months next preceding. As we have seen, the expression is as capable of one meaning as of the other.

It follows that the pleas are bad for uncertainty in this particular, irrespective of the question what day the plea refers to as the end of "the year next preceding." Capwell v. Sipe, 17 R. I. 475, 23 Atl. 14, 33 Am. St. Rep. 890; State v. Rife, 18 R. I. 596, 30 Atl. 467; O'Connell v. Queen, 11 C. & F. 155.

The argument that if the personal capacity or fitness of a juror to perform jury service—e. g., ability to hear, soundness of mind, lack of interest, or bias—must be found to exist at the time of actual service, political qualifications to vote must also exist at that time, is unsound, and involves, as we have said, the assumption that one duly selected from a class of persons as provided by law becomes personally incapable or unfit for jury service when he ceases to have the right to vote at certain future elections.

While it must appear at the time of service that one has the political qualification, this is shown by the fact that he was drawn and summoned at a time when the law imposed upon him as a then member of a certain class of voters the duty to serve as a juror throughout

a future period positively prescribed by law; in other words, it is only necessary at the time he is impaneled and sworn to inquire whether he is a person who is one of those previously designated by law for such future service as is to follow the impaneling of the jury.

The mental and physical capacity to perform the work of a grand juror is not affected by his subsequent loss of his vote.

That the Legislature of Rhode Island, because they thought it wise to choose jurors from the class of property voters, intended also to exclude immediately from the list of jurors so chosen any person who, during the short period for which the law holds him to service, should cease to be a voter, is a proposition that finds no support in the Rhode Island statutes, but, on the contrary, is inconsistent with the express provisions of those sections which prescribe the period of service. To carry along together, and thus mix and confuse statutes relating to two distinct matters, jury service and elections, is wholly impractical and unreasonable.

[3] The remaining pleas in abatement may be shortly disposed of. Each sets forth what is alleged to be misconduct of attorneys for the United States in the grand jury room.

Neither of these pleas sets up facts which raise a legal presumption that the grand jury was unduly influenced, or that it did not perform its full duty in pursuance of the instructions given by the court, or that the finding of the indictment resulted from improper influence. Even if the acts alleged may be regarded as improprieties, they are not of such a nature that actual prejudice must be presumed as matter of law.

The statement that acts were "to the manifest prejudice of the defendant" is insufficient to obviate the objection that it does not appear from the allegations of the pleas that the finding of the indictment was the result of improper influence. Agnew v. U. S., 165 U. S. 36, 45, 17 Sup. Ct. 235, 41 L. Ed. 624.

The pleas alleging misconduct are each and all insufficient to negative a legal finding of the indictment by the grand jury, uninfluenced by the alleged misconduct.

Demurrers sustained.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes